**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JACQUELINE McCLENDON,** | ) | **CASE NO. 1:08CV1189** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KATHLEEN M. O'MALLEY** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **CHALLENGE FINANCIAL** | ) | |
| **INVESTORS CORP., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **REPORT AND RECOMMENDATION** |

On June 12, 2008, Plaintiff, on behalf of herself and others similarly situated, moved to remand this action to state court for lack of subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").[1]  Defendants opposed the motion.  Judge Kathleen O'Malley referred the matter for a report and recommendation.  After full briefing and oral argument, the Magistrate Judge recommends Plaintiff's Motion to Remand be denied.

**I.  Background**

On April 9, 2008, Jacqueline McClendon, Plaintiff filed an amended class-action complaint in the Lorain County, Ohio, Court of Common Pleas naming numerous defendants. McClendon is a citizen of the State of Ohio who purchased mortgage loan services from Defendant Challenge Financial Investors Corp. ("Challenge") in July 2007.[2]  Challenge was a licensed mortgage broker in Ohio beginning in October 1998.  It was a Florida corporation with its principal place of business in that state.  Challenge was a wholly-owned subsidiary of

---

[1]*See* 28 U.S.C. § 1332(d)

[2]Challenge terminated its business some time in 2007.  (Oral Arg. Tr. at 4.)

Defendant PiggyBanker Stock Company ("PiggyBanker").  Defendant PiggyBanker is a Florida corporation with its principal place of business in Shawnee Mission, Kansas.  Nations Holding Company ("Nations") is a Kansas corporation with its principal place of business in Prairie Village, Kansas.  The relationship between Nations and PiggyBanker is not entirely clear; however, at the least, Nations contracted with PiggyBanker to consolidate financial information between PiggyBanker and Challenge.  (Faoro Dep. at pp. 12-15.)  Defendant Daniel Hurd is an Ohio citizen who was employed by Challenge as a loan officer.  According to the Amended Complaint, he was licensed by the State of Ohio as a loan officer in June 2006.  Defendant Harold Barian was Challenge's President, but is now deceased.  Defendant Michael Riley is a citizen of Missouri and was at all relevant times an officer of Challenge, PiggyBanker and Nations.  Finally, Defendant Christopher Likens is a citizen of Kansas and was at all relevant times the President of PiggyBanker and at least the majority owner of Nations.[3]

As set out in the Amended Complaint, in July 2007, Plaintiff purchased services from Challenge relating to a mortgage loan.  Challenge failed to provide a mortgage loan origination disclosure statement to Plaintiff in compliance with Ohio Rev. Code.§ 1322.062.  Challenge received a payment of money from the lender without making full advance disclosure to Plaintiff.  Lastly, it used identical form applications, statements, notices, and contracts, as well as standardized procedures and practices in dealing with Plaintiff and other class members.  (Amended Complaint, ¶¶ 29-34.)

The Amended Complaint includes six counts claiming damages arising out of and/or relating to mortgage lending, alleged violations of the Ohio Mortgage Brokers Act,[4] and

---

[3]*See* Amended Complaint ¶¶ 9, 23; Notice of Removal ¶¶ 8-10; Doc. No. 34, Nations Opposition p. 3-4.

[4]The Ohio Mortgage Broker Act, specifically Ohio Rev. Code §§ 1322.062 and 1322.071, sets forth what must be contained in a mortgage loan origination disclosure statement and the prohibited acts of Ohio mortgage brokers, including any "referral fee or kickback of any kind."  O.R.C. 1322.071(B)(3).  Plaintiff alleges the non-disclosure of "yield spread premiums."  A yield-spread premium occurs when a broker causes a borrower to

alleged breaches of common law fiduciary duties as follows:

> Count One: A class action claim against Challenge involving all Ohio clients/borrowers of Challenge alleging a breach of fiduciary duty in failing to make advance disclosures of payments it received from lenders.

> Count Two: A class action claim against Challenge involving a smaller class of non-business clients/borrowers alleging a statutory claim for failure to make advance disclosures of payments it received from lenders.

> Count Three: A class action claim against Challenge involving a still smaller class of non-business clients/borrowers since May of 2002 alleging a statutory claim for failing to provide mortgage loan origination disclosure statements.

> Count Four: A non-class action count brought by McClendon against Hurd and Barian alleging violation of their duties to make disclosure of payments received from the lender and failing to provide the required mortgage loan origination disclosure statement.

> Count Five: A class action claim against PiggyBanker, Nations, Barian, Riley, and Likens alleging their wrongful participation in the violations of Ohio common law and statutory law as set out in Counts One through Three.

> Count Six: A class action claim against PiggyBanker, Nations, Barian, Likens, and Riley alleging their failure to preserve Challenge's assets when wrapping up its business.

Plaintiff defined the class in Counts One, Five, and Six as: "All persons who, during the period from October 30, 1998 to the present, purchased services from Challenge Investors

---

accept an interest rate higher than the rate a lender is willing to offer.  In return, the broker receives a payment from the lender (usually a percentage of the difference), sometimes without the knowledge or consent of the borrower.

Corp. relating to a mortgage loan on Ohio realty."[5]  (Amended Complaint ¶¶ 36, 66.)  Plaintiff alleged that over this time period, Defendant Challenge entered into transactions with "no less than hundreds of persons." (Amended Complaint ¶¶ 39, 69.)

Plaintiff asserted damages to be: "an amount not less than the sum of all amounts received by Challenge in the transaction(s) . . ." (Count One) and  ". . . an amount not less than the amount paid by the Subclass Member to Challenge. . ."[6]  (Counts Two and Three) (Amended Complaint ¶¶ 83, 90, 97)  Plaintiff is also seeking reasonable attorney's fees, court costs and punitive damages."  (Amended Complaint ¶¶ 90, 97, 117, 125, 127, 129.)

On May 13, 2008, defendants Nations Company and Christopher Likens filed a notice of removal to this Court based on 28 U.S.C. §§ 1332(d)(2), 1441 and 1446 asserting that the purported class was more than 100 members, that at least one member of the purported class is a citizen of a state different from a removing class defendant, and the matter in controversy exceeds the sum of $5 million.  (Doc. No. 1.)

On June 12, 2008, Plaintiff filed a motion to remand the case to Lorain County Court of Common Pleas.[7]  (Doc. No. 17.)  She argued that defendants had not presented admissible

---

[5]There are two other class-claims in the Amended Complaint.  The classes in Counts Two and Three are not as broadly defined as they are limited by dates or legal issues.  The Court will focus on the more broadly defined class as it, by definition in Plaintiff's Amended Complaint, contains the most putative members.

[6]The amount requested in damages is consistent with Ohio statute.  *See* Ohio Rev. Code § 1322.11(A)(2) which provides: "Damages awarded . . . shall not be less than all compensation paid directly and indirectly to a mortgage broker from any source, plus reasonable attorney's fees and court costs."

[7]She initially argued that the Notice of Removal was fatally defective at the time of removal as Defendants failed to provide evidence establishing the amount-in-controversy requirement under the amendments to diversity jurisdiction enacted by the Class Action Fairness Act of 2005 ("CAFA").  At oral argument, Plaintiff conceded that although the Sixth Circuit has not addressed this issue, other courts in this district have allowed defendants to rely on post-petition evidence to support the grounds for removal.  Oral Argument Tr. 22-23; *Brown v. Jackson Hewitt, Inc*., 2007 U.S. Dist. LEXIS 13328, *13, Case No. 1:06cv2632 (N.D. Ohio Feb. 27, 2007)(Gaughan, J.); *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945 (11th Cir. 2000).  Also, Congress contemplated that when making CAFA jurisdictional

evidence as to the amount-in-controversy.  Furthermore, she argued that even if federal jurisdiction otherwise exists, a CAFA-enacted exception, specifically the "home state exception," requires the Court to remand this case.  *See* 28 U.S.C. § 1332(d)(4)(B).

Plaintiff then filed an unopposed motion for leave to conduct jurisdictional discovery which the Court granted on July 11, 2008.  (Doc. Nos. 18 and 26.)  Nations submitted a Declaration of Christopher Faoro[8] stating that Challenge generated over $9 million in revenue in connection with mortgage loans on Ohio realty from January 1, 2001 through December 31, 2007.  The Court then granted Plaintiff's request to postpone filing a reply brief until after Faoro's deposition could be taken for the limited purpose of questioning him as to the amount-in-controversy.  On December 10, 2008, after briefing was completed, oral arguments were held.  The Court must determine whether the Defendants have established under CAFA the class size and the amount-in-controversy requirements.  If so, the Court must then determine whether any exceptions to jurisdiction exist.

## II.  Standard and Law

### A.  Removal

"The district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005) (internal quotation marks omitted.)  While Plaintiff originally filed this case in state court, the removal statute, 28 U.S.C. § 1441, "authorizes" Defendants to remove "civil actions from state court to federal court when the action initiated

---

determinations, "a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes."  S.Rep. No. 109-14, at 44; *accord Hirschbach v. NVE Bank*, 496 F.Supp.2d 451, 460 (D.N.J. 2007).  The Court will consider evidence beyond the first set of pleadings in order to determine jurisdiction.

[8]In the Declaration of Chris Faoro dated August 25, 2008, submitted by Nations, Faoro is identified as a Nations employee in the Financial Department.  (Doc. No. 37-2.)  On August 11, 2008, Faoro signed a verification of Piggybanker's responses to discovery requests and identified himself as the Vice President of Piggybanker Stock Company.  (Doc. No. 41-5, page 6.)

5

in state court is one that could have been brought, originally, in a federal district court." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 821 (6th Cir. 2006) (*quoting Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005)).

**B.  Class Action Fairness Act of 2005 ("CAFA")**

CAFA, enacted February 18, 2005, greatly expanded federal jurisdiction over interstate class action lawsuits. *Joseph v. Unitrin, Inc.*, 2008 U.S. Dist. Lexis 61726, *9 (E.D. Tex. August 12, 2008); *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 711 n.47 (5th Cir. 2008.  "Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, [Congress] firmly believes that such cases properly belong in federal court."  S.Rep.No. 109-14, at 4 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 5.  Accordingly, CAFA grants federal courts original jurisdiction to hear class action lawsuits when the putative plaintiff class numbers 100 or more, there is minimal diversity (any member of the plaintiff class is a citizen of a different state from any defendant), and more than five-million dollars is in controversy.[9]  28 U.S.C. § 1332(d).

---

[9]28 U.S.C. § 1332(d)(2) and (5) states:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which–
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendants;
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.
>
> * * *
>
> (5)  Paragraphs (2)-(4) shall not apply to any class action in which–
> * * *
> (B) the number of members of all proposed plaintiff classes in the aggregate is less than 100.

6

While the general rule regarding federal jurisdiction requires that the $ 75,000 amount in controversy threshold must be established for each individual plaintiff, under CAFA the required $5 million amount-in-controversy can be satisfied by aggregating the individual class member claims. 28 U.S.C. 1332(d)(6). CAFA also provides special provisions regarding removal of class actions to federal court. 28 U.S.C. 1453(b). A class action may now be removed to federal court without regard to whether any defendant is a citizen of the state in which the action is brought, and any defendant can remove the action without the consent of other defendants. *Id.*

When the underlying complaint seeks an indeterminate amount of damages, the removing defendant has the burden of demonstrating, by a preponderance of the evidence, that all requirements for removal have been met, including the class size and amount in controversy. *Brill v. Countrywide Home Loans,* 427 F.3d 446, 448-49 (7th Cir. 2005); *Brown v. Jackson Hewitt, Inc*., 2007 U.S. Dist. Lexis 13328, Case No. 1:06-cv-2632, *5-6 (N.D. Ohio Feb. 26, 2007); *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001); *Gafford v. Gen'l Elec. Co.*, 997 F.2s 150, 158 (6th Cir. 1993). In *Gafford*, the Sixth Circuit determined that this did not require the defendant to "research, state and prove the plaintiff's claim for damages," but the defendant must do more than show the "amount in controversy 'may' or 'could' exceed the requirement." *Id*. at 158-59. The Sixth Circuit has since held that CAFA does not alter this burden or standard for removal. *Smith v. Nationwide Prop. & Cas. Inc. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007). "All doubts as to the propriety of removal are resolved in favor of remand." *Brown*, 2007 U.S. Dist. Lexis 13328 (*quoting Jacada, Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 704 (6th Cir. 2005)).

The court has wide discretion to determine what evidence to consider in making its determination regarding jurisdiction. *Id.* The court may engage in factual analysis beyond the pleadings. *See Anthony v. Small Tube Mfg. Corp*., 535 F.Supp.2d 506, 512 (E.D. Pa. 2007) (*citing Schwartz v. Comcast Corp*., Civ.A.No. 05-2340, 2006 U.S. Dist. LEXIS 7499, 2006 WL 487915, at *5-7 (E.D. Pa. Feb. 28, 2006)). *See, e.g., Miedema v. Maytag Corp.,* 450 F.3d 1322 (11th Cir. 2006)*; Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 949 (11th Cir.

7

2000); *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.,* 463 F.Supp.2d 583, 592-93 (E.D. La. 2006)(*affirmed in* 485 F.3d 793 (5th Cir. 2007))(district court ordered the defendants to produce additional evidence regarding the citizenship of the putative class).  Moreover, when subject matter jurisdiction is called into doubt, "jurisdictional discovery should be allowed unless the plaintiff's claim is clearly frivolous." *Massachusetts School of Law at Andover, Inc. v. American Bar Assoc.*, 107 F.3d 1026, 1042 (3d Cir. 1997) (internal quotations omitted).  Congress cautions, however, that jurisdictional determinations "should be made largely on the basis of readily available information."  S.REP.NO. 109-14, at 44; *Hirschbach v. NVE Bank,* 496 F.Supp.2d 451, 460 (D.N.J. 2007).

The types of evidence required to meet this preponderance burden have been summarized as follows:

> In making this calculation, a federal court "should consider the plaintiff's motives; should look at prior lawsuits between the parties, if any; should look at awards in similar lawsuits between other parties; should consider any other evidence defendant may have; and should exercise its common sense."

*Brown* at 13; *Hahn v. Auto-Owners Ins. Group*, No. 3:04-cv-380 2006 U.S. Dist. Lexis 70299, *2 (E.D. Tenn. Sept. 27, 2006) (*quoting Graham v. Champion Int'l Corp.*, No. 2:97-cv-83, 1997 U.S. Dist. Lexis 7401, *9 (E.D. Tenn. May 16, 1997)).  Other "[e]vidence may include party affidavits[, a] . . . demand in a prior action which is based on the same events as the present action . . . and pretrial testimony."  *Brown* at 13; *Richmond v. Populous Group, LLC*, No. 4:05cv1900, 2005 U.S. Dist. Lexis 20934, *4-5 (N.D. Ohio Sept. 23, 2005).

Once jurisdiction has been established preliminarily under CAFA, however, the objecting party bears the burden of proving by a preponderance of the evidence the applicability of any claimed jurisdictional exceptions.  *Joseph v. Unitrin, Inc*. 2008 U.S. Dist. LEXIS 61726, * 11, 12, Case No. 1:08-cv-077 (E.D. Tex. Aug. 12, 2008); *Preston*, 485 F.3d at 797.  Typically, a plaintiff is in a better position than a defendant to carry this burden. *Preston*, 485 F.3d at 813.  Moreover, "longstanding [removal] doctrine placing the burden on a plaintiff to show exceptions to jurisdiction buttresses the clear congressional intent to do the same with CAFA."  *Id*.

### III.  Analysis

#### A.  Class Size Requirement

At no time prior to oral argument did Plaintiff assert that Defendants failed to meet the numerosity requirement.  Defendants contend that the class size under CAFA is met as Plaintiff's class definition is very broad:  since 1998, all customers of Challenge relating to a mortgage loan on Ohio realty.  Therefore, the class size of more than 100 is easily established.  At oral argument, Plaintiff noted that since Defendants had not come forth with any actual evidence establishing the size of the class, if the Court determines the class size exceeds 100, it would be mere speculation.[10]  (Oral Arg. Tr. at 32.)

The CAFA does not apply to class actions in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100."  28 U.S.C. § 1332(d)(5)(B).  Thus the Court need only find that the proposed plaintiff class as defined for Counts One, Five, and Six must consist of 100 persons or more.  Plaintiff defined the class in Counts One, Five, and Six as: "All persons who, during the period from October 30, 1998 to the present, purchased services from Challenge Investors Corp. relating to a mortgage loan on Ohio realty."[11]  (Amended Complaint ¶ 36.)  Looking at the Amended Complaint at removal,  and presuming that Plaintiff's factual contention was asserted in good faith and based upon evidentiary support or likely to have evidentiary support after opportunity for investigation and discovery, she alleged that Challenge entered into transactions with "no less than hundreds of persons."  (Amended Complaint ¶¶ 29-34, 39, 49, 59.)  Therefore, there is present here a sufficient putative class size to fall within the CAFA.  *See* Fed.R.Civ.P. 11(b)(3); *See also Kendrick v. Standard Fire Ins. Co.*, 2007 WL 1035018, Case No. 06-141 (E.D.Ky. Mar. 31, 2007).

---

[10]Defendants noted at oral argument that they have no knowledge of the status of Challenge's client/borrower records.  (Oral Arg. Tr. at 12.)

[11]There are two other class-claims in the Amended Complaint.  The Classes in Counts Two and Three are not as broadly defined as they are limited by dates or legal issues.  The Court will focus on the more broadly defined classes as they, by definition in Plaintiff's Amended Complaint, contain the most members.

9

In addition, the Defendants claim through the Faoro declaration that the amount-in-controversy exceeds $9.3 million, representing the total amount of Ohio mortgage fee income received by Challenge from 2001 through 2007.  (*See* discussion re: Amount-in-Controversy, below.)  Considering that amount, if the class as defined consisted of fewer than 100 members, the average amount paid to Challenge by each client/borrower would exceed $93,000, an unrealistically high number.

The class size requirement is met.

**B. Amount-in-Controversy**

Defendants contend that the amount-in-controversy requirement under CAFA is met, as the amount of damages Plaintiff is seeking is also broad – all sums received by Challenge in transactions involving Ohio real estate between 1998 and 2007.  Defendants rely on the declaration and deposition testimony of Christopher Faoro to demonstrate that revenues of Challenge from Ohio mortgage loans during the period 2001 through 2007 was $9,394,640.

Plaintiff challenged Faoro's declaration and deposition testimony for several reasons. First, Plaintiff claims that both are inadmissible as Faoro is employed by Nations, not Challenge.  He conceded that he had no idea what components make up the revenue line-items on which he relied; he had no role in determining the accuracy of Challenge's data entries; and, he did not recall asking anyone at Challenge about the accuracy of the data. (Faoro's Dep. at  17-19; 30, 32, 38, 39, 44.)

Plaintiff also argues that Faoro's declaration is inadmissible hearsay as it is a statement offered into evidence to prove the truth of the matter asserted.  Faoro conceded at the deposition that the production of this report was not a regular business practice.  In fact, he had never been asked to produce such a report.  *Id*. at page 59-60.  Plaintiff asserts the report would be inadmissible under the business-record exception as the report was not completed in the regular course of the business.  *See* Fed. R. Evid. 803(6).

However, at oral argument, Plaintiff conceded that if the Court finds the report to be admissible, then the amount-in-controversy is met.  (Oral Arg. Tr. at 26.)

Defendants argue that Faoro's testimony verified the integrated accounting system of

10

Nations which consisted of financial data entered by Challenge and used in its day-to-day operations.  (Faoro Dep. at 27-35.)  He stated that while Challenge is no longer operating, the accounting system information is maintained on a secure server by Nations pursuant to the normal course of business between Nations, PiggyBanker, and Challenge.  *Id*. at  27; (Faoro Dep. at pp. 12-21.)  From this data, Faoro prepared the report listing Challenge's revenue from 2001-2007 for Ohio mortgage fee income.

Records prepared in the course of regularly conducted business are particularly reliable as the person preparing the record has an incentive to be accurate.  *Pullins v. Klimley*, 2008 WL 85871, *32 (S.D. Ohio, Jan. 7, 2008) (*citing United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998)).  Therefore, the Federal Rules of Evidence provide an exception to the inadmissibility of hearsay for business records.  *Id.*

The business record exception sets forth the following four requirements for admissibility of documents that are otherwise hearsay: 1) the document must have been made in the course of a regularly conducted business activity; 2) the document must have been kept in the regular course of that business; 3) the regular practice of that business must have been to have made the document; and 4) the document must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.  *Pullins* at *32 (*citing United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2004)(*citing* Fed.R.Evid. 803(b))).  Also, the document must be presented through "the testimony of the custodian or other qualified witness[.]"  *Id.* (*quoting* Fed.R.Evid. 803(6)).  The "other qualified witness," if applicable, is not required to have control of the record or personal knowledge of the preparation of the record but is required to be familiar with the record-keeping procedures of the organization.  *Id.* (*citing Dyno Construction Co. v. McWane, Inc*., 198 F.3d 567-575-76 (6th Cir. 1999)); *Weinstock*, 153 F.3d at 276.  Business records meeting the criteria set forth in  Fed.R.Evid. 803(6) are admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  *Id.* (*quoting* Fed.R.Evid. 803(6)).  The trial court is given "great latitude" on evidentiary rulings regarding trustworthiness and federal law favors the admission of evidence which has any probative

11

value.  *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986).

Applying Fed.R.Evid 803(6) and the case law, Faoro is not required to have personal knowledge of the preparation of the record but is required to be familiar with the record-keeping procedures of the business.  Defendants have demonstrated that Faoro is familiar with their accounting procedures.  He testified that he assisted the Chief Financial Officer of Nations in consolidating financial statements.  He was knowledgeable about the accounting systems used and that he had been consolidating Challenge information throughout the period from 2001-2007.  *Id.* at 12, 20, 47.  Furthermore, Plaintiff has pointed to no circumstances that shows the integrated computer program lacked trustworthiness.  As defense counsel pointed out to the court at oral argument, income taxes were computed based on this revenue figure; there is no justification for this amount to be inflated.  Lastly, Faoro stated that the $9.3 million revenue figure was comprised of data from the automated accounting system and he believed the amount to be accurate.  *Id.* at 46-47.  The fact that Faoro had never run a similar report – that is he had not attempted to determine the revenue for a period of years from a single state where Challenge did business – does not render the figure unreliable as it is simply a computer query of otherwise reliable information entered in the regular course of business.  Therefore, the Court concludes that Faoro's Declaration claiming $9.3 million in revenue can be properly considered for CAFA jurisdiction.  Plaintiff acknowledged that the full amount of the revenue received in mortgage fees by Challenge for the relevant time period is in controversy.  (Oral Arg. Tr. at p. 34.)  Defendants have established the amount-in-controversy requirement of CAFA.

As both class size and amount-in-controversy are established, this Court has jurisdiction unless the Plaintiff proves an exception is applicable.

### C. Home State Exception

Plaintiff argues that this Court must remand this action to state court under the "home state exception" of CAFA.  28 U.S.C. § 1332(d)(4)(B).  Under this exception, a district court shall decline jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the

action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  The burden is on the Plaintiff to prove the exception.  CAFA's stated purpose of allowing federal courts to hear more interstate class actions is best furthered by placing the burden of proof on the party seeking to avail itself of a CAFA exception.  *Mattera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70, 80 (S.D. N.Y. 2006).

At oral argument, Defendants conceded that over two-thirds of the class are Ohio citizens.  (Oral Arg. Tr. at 50.)  Therefore, the Court must determine the citizenship of the primary defendant or defendants.

For purposes of determining diversity, state citizenship of a natural person is treated as synonymous with domicile.  *Safeco Ins. Co. v. City of White House, Tenn.*, 36 F.3d 540, 544 (6th Cir. 1994).  A corporation, however, is deemed the citizen of the state of incorporation and the state of its principal place of business.  28 U.S.C. § 1332(c)(1).

"Primary defendant" is not defined in CAFA.  However, as "evident from the statute's use of the phrase '*the* primary defendants' rather than '*a* primary defendant,' 'the plain language of the statute requires remand only when *all* of the primary defendants are residents of the same state in which the action was originally filed.'"  *Anthony v. Small Tube Mfg. Corp.*, 535 F.Supp.2d 506, 515 (E.D. Pa. Sept. 2007) (*quoting Robinson v. Cheetah Transportation*, Civ.A.No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006)) (emphasis in original).  Nevertheless, there seems to be a settled judicial understanding of "primary defendants" as those parties having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable.  *Passa v. Derderian*, 308 F.Supp.2d 43, 61-64 (D.R.I. 2004); *Kitson v. The Bank of Edwardsville*, 2006 U.S. Dist. Lexis 85285, *54 (S.D. Ill. Nov. 22, 2006).  The "secondary defendants" are those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification.  *Kitson* at *55.  Furthermore, this interpretation of "primary defendants" does not require a court to make a pretrial determination of liability or culpability, but rather requires only a review of the complaint to determine which defendants are sued directly.  *Id*; *see, e.g.,*

*Preston v. Tenet Healthsystem Mem. Med. Ctr.*, 485 F.3d 793 (5th Cir. 2007); *Anthony v. Small Tube Mfg.Corp.*, 535 F.Supp.2d at 516; *Laws v. Priority Trustee Servs. of N.C., L.L.C.*, 2008 U.S. Dist. LEXIS 84758, *12 (W.D.N.C. Aug. 11, 2008).

Here, Hurd, employed as a mortgage broker by Challenge, is the only defendant with Ohio citizenship.  Plaintiff argues that Hurd is the only primary defendant as he is the broker who dealt directly with Plaintiff and allegedly did not provide her with the appropriate mortgage loan origination disclosure statements or inform her of the "yield spread premium." Therefore, Plaintiff contends the two requirements are met and this court must decline jurisdiction.  She avers that the purpose of enacting CAFA was to allow cases that appropriately belong in state court to remain there.  Conceding that Hurd is not a named defendant in any class action claim, Plaintiff also argues that CAFA does not require that a "primary defendant" under the home state exception be a defendant from whom the putative class seeks relief.

Defendants argue that Hurd is not a primary defendant as only one claim, count four, a personal claim by Plaintiff and not a class action claim, is asserted against him.  Defendants contend while Hurd was the broker on Plaintiff's transaction, he was not the broker for all the class member transactions.  Therefore, Hurd is not a primary defendant.  In other words, Defendants argue that Hurd is not a "target" defendant because he does not have any "exposure to significant portions of the proposed class."  Defendants claim that Hurd was not a named defendant in the original complaint but was subsequently added, demonstrating further that he is not a primary defendant.  Lastly, Defendants argue that if an individual employee or agent is the primary defendant even when not named, corporations would never be able to remove a case under CAFA as the corporation would always be vicariously liable.

Hurd, an employee of Challenge, was the loan officer on Plaintiff's transaction in July 2007.  However, Hurd was not the loan officer for all putative class member transactions during the relevant time period between 1998 and 2007.  Per the Amended Complaint, Hurd was not issued his Ohio Loan Officer license until June 21, 2006, (Amended Complaint ¶ 23.)  Challenge became a licensed Ohio Mortgage Broker as of October 30, 1998.  (Amended

14

Complaint ¶ 22.)  Clearly, other putative class member claims are not based upon the actions of Defendant Hurd, leaving Challenge the only party having a "dominant relation to the subject matter of the controversy."  If Hurd is indeed a primary defendant, though not one from whom relief is requested by the class, as argued by Plaintiff, he is not the only primary defendant.  The Court finds that Challenge is a primary defendant.

Further, considering Count Six, the final class action claim, Plaintiff alleges that PiggyBanker, Nations and Messrs. Barian, Riley and Likens failed to preserve Challenge's assets.  (Amended Complaint ¶¶ 118-126.)  These Defendants have a "dominant relation to the subject matter of the controversy" set forth in that Count.  At oral argument, Plaintiff admitted that under Count Six Nations, Riley and Likens are primary defendants.  (Oral Arg. Tr. at 55.)

As all primary defendants are not Ohio citizens, the home state exception is inapplicable.

### IV.  Conclusion

As Defendants have established the requirements for federal jurisdiction under CAFA, and Plaintiff has not established the applicability of the home state exception, the Court recommends that Plaintiff's Motion to Remand be denied.

    s/Greg White
    United States Magistrate Judge

Date:   January 27, 2009

### OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**